1 PAUL T. FRIEDMAN (CA SBN 98381)
PFriedman@mofo.com
2 PHILIP T. BESIROF (CA SBN 185053)
PBesirof@mofo.com
3 MORRISON & FOERSTER LLP
425 Market Street
4 San Francisco, California  94105-2482
Telephone: 415.268.7000
5 Facsimile: 415.268.7522

6 Attorneys for Defendant
ANDREW M. MILLER
7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12 | IN RE POLYCOM, INC. DERIVATIVE | Lead Case No. 3:13-cv-03880-SC |
| LITIGATION, | |
13 | | (Derivative Action) |
14 | This Document Relates To: | **DEFENDANT ANDREW M. MILLER'S** |
| | **NOTICE OF MOTION AND MOTION TO** |
15 | ALL ACTIONS. | **DISMISS PLAINTIFFS' VERIFIED** |
| | **CONSOLIDATED FIRST AMENDED** |
16 | | **SHAREHOLDER DERIVATIVE** |
| | **COMPLAINT; MEMORANDUM OF** |
17 | | **POINTS AND AUTHORITIES IN** |
| | **SUPPORT THEREOF** |
18 | | |
19 | | Hearing Date:   August 22, 2014 |
| | Hearing Time:  10:00 a.m. |
20 | | Judge:               Hon. Samuel Conti |
| | Courtroom:        1, 17th Floor |
21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT on Friday, August 22, 2014, at 10:00 a.m., or at such

4  time as the matter may be heard, in the courtroom of the Honorable Samuel Conti, located at

5  450 Golden Gate Avenue, San Francisco, California, Courtroom 1, 17th Floor, defendant

6  Andrew Miller will, and hereby does, move to dismiss Plaintiffs' Verified Consolidated First

7  Amended Shareholder Derivative Complaint for Breach of Fiduciary Duty, Unjust Enrichment,

8  and Waste of Corporate Assets ("Amended Complaint"), which was filed on April 4, 2014

9  (ECF No. 47), under Federal Rules of Civil Procedure 12 and 23.1.

10     The Amended Complaint should be dismissed because Plaintiffs lack standing to pursue

11  this action under Rule 23.1.  Plaintiffs did not make a pre-suit demand on Polycom Inc.'s Board

12  of Directors to pursue the matters alleged in the Amended Complaint, and they did not plead

13  particularized facts demonstrating that making such a demand would have been futile.  *See* Fed.

14  R. Civ. P. 23.1(b)(3).  Dismissal, therefore, is required.  Fed. R. Civ. P. 12(b)(1), (6).

15     This Motion is based upon this Notice and the accompanying Memorandum of Points and

16  Authorities, the Request for Judicial Notice, the Declaration of Philip T. Besirof in Support of

17  Mr. Miller's Motion to Dismiss, the reply brief that will be filed under the briefing schedule, the

18  papers on file in the action, the argument of counsel at the hearing, and such other matters as may

19  be considered by the Court.[1]

20

21

22

23

24

25

26      [1]Throughout this Motion, Plaintiff's Amended Complaint is cited by paragraph number,
¶ --.  Philip Besirof's Declaration is cited by the Declaration's paragraph number, Decl. ¶ --.
27  Exhibits to the Besirof Declaration are cited by exhibit number, Ex. --.  As set forth in the
Request for Judicial Notice, the Court may consider these exhibits in deciding this Motion
28  without converting it into a motion for summary judgment.

ANDREW MILLER'S MOTION TO DISMISS
Lead Case No. 3:13-cv-03880-SC                                                                                    i

1

**ISSUE TO BE DECIDED**

2          1.          Should the Amended Complaint be dismissed on the grounds that Plaintiffs lack

3    standing under Rule 23.1 because they did not make a pre-suit demand on Polycom's Board of

4    Directors and do not allege with particularity that a majority of Polycom's Directors is

5    disqualified from considering a pre-suit demand?

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... i

ISSUE TO BE DECIDED.......................................................................................... ii

TABLE OF CONTENTS ............................................................................................ iii

TABLE OF AUTHORITIES ...................................................................................... v

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND AND ALLEGATIONS................................................ 2

    Polycom Announces Mr. Miller's Resignation................................................ 2

    Polycom Confirms that Any Irregularities in Mr. Miller's Expense Reports Did
    Not Materially Impact the Company's Financial Statements. ........................... 2

    Plaintiffs Amend Their Original Complaint After Defendants Filed
    Motions to Dismiss. ........................................................................................ 3

    Plaintiffs' Amended Complaint Alleges Claims for Breach of Fiduciary Duty,
    Unjust Enrichment, and Waste of Corporate Assets........................................ 4

    Plaintiffs Do Not Allege that Polycom's Board Members Knew About
    Mr. Miller's Allegedly Improper Expense Submissions or Personally Benefited
    from Them....................................................................................................... 4

    Plaintiffs Did Not Make a Pre-Suit Demand on Polycom's Board
    to Pursue Litigation. ....................................................................................... 5

ARGUMENT .............................................................................................................. 5

    A.    Plaintiffs' Allegations About Failing to Ensure Compliance with
        Polycom's Policies Do Not Establish Demand Futility. ..................... 7

        1.    There are no allegations of inadequate controls......................... 8

        2.    There are no allegations of a deliberate failure to monitor. ....... 8

    B.    Plaintiffs' Allegations About False or Misleading Financial
        Statements Do Not Establish Demand Futility. ................................. 10

    C.    Plaintiffs' Allegations About Authorizing Mr. Miller's Separation
        Agreement and Release Do Not Establish Demand Futility.............. 13

        1.    The Separation Agreement and Release Is Protected by the
        Business-Judgment Rule. ......................................................... 13

        2.    The Separation Agreement Supports the Board's
        Independence............................................................................ 15

1

D.     Plaintiffs' Allegations About Mr. Miller's Wholesale Changes to
       Polycom Do Not Establish Demand Futility.......................................16

2

3

E.     Plaintiffs' Allegations About Polycom's Repurchases of Company
       Stock Do Not Establish Demand Futility............................................16

4

F.     Plaintiffs' Other Allegations Do Not Establish Demand Futility. .......................17

5

CONCLUSION .......................................................................................................................18

6

ECF ATTESTATION ..............................................................................................................19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Andropolis v. Snyder*,
5
No. 05 CV 01563 EWN BNB, 2006 WL 2226189 (D. Colo. Aug. 3, 2006) ................... 8, 15

6

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) .............................................................................. 6, 13

7

8

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ......................................................................... 6, 15, 16

9

*Carauna v. Saligman*,
10
No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) ....................................... 17

11

*Ferre v. McGrath*,
No. 06 Civ. 1684, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ........................... 17

12

13

*Grobow v. Perot*,
539 A.2d 180 (Del. 1988) ............................................................................... 6

14

*Guttman v. Huang*,
15
823 A.2d 492 (Del. Ch. 2003) ...................................................................... 7, 9, 10

16

*Hazelton v. Kuttner*,
No. 08:06CV02063, 2007 WL 1120405 (D.S.C. Apr. 13, 2007) ............................ 9

17

18

*In re Accuray, Inc. S'holder Derivative Litig.*,
757 F. Supp. 2d 919 (N.D. Cal. 2010) ........................................................... 11, 12

19

20

*In re Baxter Int'l, Inc. S'holders Litig.*,
654 A.2d 1268 (Del. Ch. 1995) ......................................................................... 9

21

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ........................................................................ 7, 8

22

23

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009) ................................................................... *passim*

24

*In re Goldman Sachs Mortg. Serv. S'holder Derivative Litig.*,
25
__ F. Supp. 2d __, No. 11 CIV 4544 WHP, 2012 WL 3293506
(S.D.N.Y. Aug. 14, 2012) ............................................................................. 11

26

*In re HP Derivative Litig.*,
27
No. 5:10-CV-3608 EJD, 2012 WL 4468423 (N.D. Cal. Sept. 25, 2012) ................. 13, 14, 15

28

*In re Intel Corp. Derivative Litig.*,
  621 F. Supp. 2d 165 (D. Del. 2009) .................................................................. 8, 17

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 808 (Del. Ch. 2005) ................................................................................. 16

*In re MIPS Techs., Inc. Derivative Litig.*,
  542 F. Supp. 2d 968 (N.D. Cal. 2008) .................................................................. 6

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ................................................................................. 16

*In re Walt Disney Co. Derivative Litig.*,
  906 A.2d 27 (Del. 2006) ........................................................................................ 14

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ............................................................................................... 5, 6

*Leung v. Schuler*,
  No. 17089, 2000 WL 264328 (Del. Ch. Feb. 29, 2000) ...................................... 6

*Lewis v. Vogelstein*,
  699 A.2d 327 (Del. Ch. 1997) ............................................................................... 13

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) .................................................................................... 10

*Potter v. Hughes*,
  546 F.3d 1051 (9th Cir. 2008) ............................................................................ 5, 14

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) ..................................................................................... 6, 15

*Speck, Jr. v. Brown*,
  No. 09 CV 3834, 2010 WL 3781044 (N.D. Ill. Sept. 20, 2010) ......................... 10

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006) ................................................................................... 6, 7, 8

*Strugala v. Riggio*,
  817 F. Supp. 2d 378 (S.D.N.Y. 2011) .................................................................. 6

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................. 10

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) .......................................................... 10, 11

*Wood v. Baum*,
  953 A.2d 136 (Del. 2008) ..................................................................................... 11

1

**OTHER AUTHORITIES**

2

Fed. R. Civ. P.
    Rule 9(b)............................................................................................................. 10, 11, 12
    Rule 12(b)(6) ................................................................................................................. 3
    Rule 23.1 ......................................................................................................... 2, 3, 5, 6, 11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2        A company's decision to pursue litigation belongs to its board of directors—not with its

3   individual shareholders.  Derivative lawsuits like this one seek to wrest that decision out of the

4   board's hands.  For this reason, derivative suits initiated by shareholders can only proceed in

5   exceptional circumstances when the board wrongfully refuses a pre-suit demand to pursue

6   litigation, or when a pre-suit demand would have been "futile."  In this case, Plaintiffs admit that

7   they did not make a pre-suit demand on Polycom's Board, but allege in conclusory fashion that

8   any such demand would have been futile.  Demand futility, however, requires particularized facts

9   showing that a majority of Polycom's Board is so riddled with conflicts of interest or lacking in

10  independence that the Board would not have fairly and impartially considered a pre-suit demand.

11  Plaintiffs do not come close to showing that a demand would have been futile here.

12       Plaintiffs brought this derivative suit a few weeks after Polycom announced the departure

13  of its CEO, Andrew Miller, and the thrust of Plaintiffs' claims involves certain alleged

14  irregularities with Mr. Miller's expense submissions.  Plaintiffs do not allege that any director—

15  let alone a majority of them—had knowledge of the alleged irregularities before Mr. Miller

16  resigned, or personally benefited from them.  Four of Polycom's five directors were outside,

17  independent directors when the suit was filed, and Mr. Miller was *not* a member of the Board at

18  that time.  Plaintiffs cannot credibly allege that a majority of directors face "a substantial

19  likelihood of liability" (the applicable standard) when there are no allegations that Board

20  members personally benefited from the alleged irregularities, knew about them, or ignored other

21  "red flags."

22       Plaintiffs also do not call into question the Board's independence.  They do not allege, for

23  example, that Mr. Miller could unseat any directors from the Board, or that family or personal

24  relationships clouded their independence.  Plaintiffs point to Mr. Miller's Separation Agreement,

25  but there are no allegations that the agreement lacked consideration or that Mr. Miller received

26  more than what he was entitled to under his employment agreements.  In any event, the fact

27  remains that the Board accepted Mr. Miller's resignation after the Company determined there

28  were immaterial expense irregularities.

1   Polycom's Board is best positioned to determine whether any of Plaintiffs' allegations

2   merit further action by the Company.  For these reasons, and those set forth below, the

3   Amended Complaint should be dismissed for failing to meet the exacting pleading standards of

4   Federal Rule of Civil Procedure 23.1.

5   <center>**FACTUAL BACKGROUND AND ALLEGATIONS**[2]</center>

6   **Polycom Announces Mr. Miller's Resignation.**

7   On July 19, 2013, defendant Andrew Miller resigned from his positions at Polycom as

8   Chief Executive Officer, President, and member of its Board of Directors.  (¶ 20.)  Polycom

9   announced Mr. Miller's departure a few days later, explaining that Mr. Miller tendered his

10  resignation after Polycom's Audit Committee found "certain irregularities" in his expense

11  submissions.  (Ex. 1; ¶ 97.)  Mr. Miller accepted responsibility for the irregularities even though

12  the Committee determined that "[t]he amounts involved did not have a material impact on the

13  Company's current or previously reported financial statements for any period."  (*Id.*)  Mr. Miller

14  entered into a Separation Agreement with Polycom in which he agreed to assist the Company

15  during a transition period.  (¶ 109; Ex. 2 at 2.)  The agreement included Mr. Miller's release of his

16  employment and compensation-related claims while at Polycom.  (Ex. 2 at 4-5.)

17  **Polycom Confirms that Any Irregularities in Mr. Miller's Expense Reports**
    **Did Not Materially Impact the Company's Financial Statements.**
18

19  In September 2013, Polycom confirmed that any irregularities in Mr. Miller's expense

20  reports did not materially impact the Company's previously filed financial statements.  (¶¶ 113-

21  114; Ex. 3.)  The Company's conclusion was based on a further review of Mr. Miller's expense

22  submissions dating back to 2010 after Mr. Miller's departure.  (*Id.*)  Although Polycom believed

23  that some of Mr. Miller's personal expenses had been reimbursed and accounted for as business

24  expenses, it "continue[d] to conclude that the amounts involved did not have a material impact on

25  the Company's previously reported financial statements."  (¶ 114; Ex. 3.)

26  _____

27      [2]Although the Amended Complaint's allegations are accepted as true for the purposes of
    this motion, Mr. Miller disputes the allegations involving him and his departure.  Mr. Miller also
    disputes certain statements in Nominal Defendant Polycom's motion to dismiss to the extent that
28  they mischaracterize the facts leading to his departure.

On April 25, 2014, three weeks after the Amended Complaint was filed, Polycom again confirmed that reimbursements did not materially impact the Company's previously filed financial statements.  (Ex. 5 at 59-60.)  Polycom disclosed that the Audit Committee had retained independent advisors to examine Mr. Miller's expense submissions, and those advisors determined that $77,000 in expenses were either "personal or most likely personal," that it was inconclusive whether (or not) another $116,000 in expenses were personal.[3]  (*Id.*)  Based on these findings, the Company concluded:

> While we cannot determine the precise amount of personal expenses that Mr. Miller improperly submitted as business expenses, the amounts did not have a material impact on Polycom's previously reported consolidated financial statements for any period because *Mr. Miller's total amount of expenses in each period were immaterial* to Polycom's financial statements.

(*Id.* at 60 (emphasis added).)

### Plaintiffs Amend Their Original Complaint After Defendants Filed Motions to Dismiss.

The first derivative complaint was filed in this Court less than a month after Polycom disclosed Mr. Miller's departure.  (ECF No. 1.)  A second derivative complaint followed soon after, and these derivative actions were consolidated on October 31, 2013.[4](ECF No. 27.)  Defendants filed motions to dismiss the operative complaint on February 7, 2014, arguing that Plaintiffs lack standing to pursue this action under Rule 23.1.[5](ECF Nos. 37, 40.)

Rather than opposing Defendants' motions, Plaintiffs filed a new consolidated complaint on March 17, 2014.  (ECF No. 44.)  This consolidated complaint contained allegations against Polycom's Board members relating to Polycom's 2012 Proxy disclosures, (*id.* at ¶¶ 10-11, 117-123), but these allegations were subsequently withdrawn in the Amended Complaint now before

---

[3]The Audit Committee's advisors also determined that 60 "flight segments" between 2011 and 2013 "were personal or were likely personal," but were unable to determine the amount of expense associated with those flights.  (Ex. 5 at 60.)

[4]Plaintiffs designated the second complaint, filed on October 16, 2013, as the operative complaint in the consolidated action.  (ECF No. 28.)

[5]Individual defendants Betsy Atkins, John Kelley, D. Scott Mercer, William Owens, and Kevin Parker also moved to dismiss the claims against them under Rule 12(b)(6).  (ECF. No. 37.)

1    the Court.[6]  (*See* ECF No. 45.)

2                    **Plaintiffs' Amended Complaint Alleges Claims for Breach of**
                     **Fiduciary Duty, Unjust Enrichment, and Waste of Corporate Assets.**
3

4            Plaintiffs allege claims for breach of fiduciary duty, unjust enrichment, and corporate

5    waste against Mr. Miller and Polycom's Board members (all of whom have been named as

6    defendants).  (¶¶ 156-171.)  These three claims are based on allegations that Defendants:

7        •   Made materially false or misleading statements about the adequacy of Polycom's
             internal controls regarding executive expense reimbursement, and about Mr. Miller's
8            compliance with those policies (¶¶ 127, 142);

9        •   Failed to take reasonable steps to implement and ensure compliance with Polycom's
             expense reimbursement policies (¶¶ 127, 143, 145-150, 169);
10

11       •   Approved Mr. Miller's Separation Agreement and Release, which unjustifiably
             granted him a "golden parachute," without first assessing the scope of Mr. Miller's
12           allegedly improper expense reports (¶¶ 112, 127, 144, 169);

13       •   Granted Mr. Miller "'carte blanche' to enact wholesale changes at Polycom," which
             put him in "a unique position of power over the Company" and established that the
14           directors were "beholden" to him (¶¶ 31, 151); and

15       •   Caused Polycom to repurchase stock at artificially inflated prices owing to the
             Company's misleading statements about its internal controls and Mr. Miller's
16           compliance with Polycom's policies (¶¶ 107-108, 169).

17                   **Plaintiffs Do Not Allege that Polycom's Board Members Knew About Mr. Miller's**
                     **Allegedly Improper Expense Submissions or Personally Benefited from Them.**
18

19           Plaintiffs allege that Mr. Miller "submitted millions of dollars of receipts" for personal

20   expenditures (¶ 3), but they do not allege that Polycom's Board members knew about these

21   alleged personal expenditures, approved them, covered them up, or otherwise benefited from

22   them.  Plaintiffs' allegations about Mr. Miller's expenses are purportedly corroborated by an

23   unidentified confidential witness who "worked as a Commissions Analyst at Polycom from

24   June 2009 to November 2011," but the witness never identifies the *amount* of any personal

25

26           [6]In the Amended Complaint, Plaintiffs' claim for corporate waste includes the allegation
     that Individual Defendants wasted corporate assets "(iii) by granting themselves unjustified
27   massive raises far above industry standards."  (¶ 169.)  This statement relates to the previous
     allegations about Polycom's 2012 Proxy disclosures that were subsequently withdrawn.
28   Mr. Miller does not address this conclusory allegation.

ANDREW MILLER'S MOTION TO DISMISS                                                        4
Lead Case No. 3:13-cv-03880-SC

expenses or states that other Board members knew about them.  (*See* ¶¶ 43-49.)  At most, the witness alleges that Mr. Miller submitted tens of thousands of dollars in personal expenses over several years for dinners, clothing, and other work equipment (among other things)—all of which is consistent with Polycom's determination that any personal expenses were immaterial to the Company's financial reporting.  (*See id.*)  Although the witness alleges that "[Mr.] Miller's improper expenditures were 'common knowledge' throughout the Company," that "most of Polycom's 'executive assistants knew,'" "that multiple senior members of the accounting department . . . [were] nervous he [Mr. Miller] would get caught," and that "[t]his knowledge reached the highest levels of senior management," there are no particularized allegations about who specifically knew what and when—or whether the Board knew.  (*See* ¶¶ 48-49.)

### Plaintiffs Did Not Make a Pre-Suit Demand on Polycom's Board to Pursue Litigation.

Before filing this action, Plaintiffs did not make a pre-suit demand on Polycom's Board to pursue any of the claims alleged in it.  (¶ 140.)  At the time the original complaint was filed, the Board consisted of five directors; Mr. Miller had already resigned his position.  (¶ 141.)  Four members of the Board were independent, outside directors (Betsy Atkins, John Kelley, D. Scott Mercer, and William Owens).  (¶¶ 21-23, 25.)  Plaintiffs allege that a pre-suit demand was not made because it "would have been a futile and wasteful act."(¶ 140.)

### ARGUMENT

It is a fundamental principle of corporate law that a corporation's directors—not its individual shareholders—control the company's affairs, including the decision whether to pursue litigation.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991); *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).  Because a derivative action infringes on this fundamental principle, Rule 23.1 establishes strict conditions "before a derivative suit can wrest control of an issue from the board of directors."  *Potter*, 546 F.3d at 1058.  Derivative actions like this one may proceed only in exceptional circumstances where plaintiff shareholders establish that the board wrongfully refused a pre-suit demand to pursue litigation, or where a pre-suit demand would have been futile.  *See Kamen*, 500 U.S. at 102 (1991); Fed. R. Civ. Proc. 23.1(b)(3).  Since Plaintiffs

1   did not make a pre-suit demand on Polycom's Board[7] (¶ 140), this action should be dismissed

2   unless Plaintiffs have met their "heavy burden" establishing that a demand, if it had been made,

3   would have been "futile."[8]  *See id.*; *Grobow v. Perot*, 539 A.2d 180, 190 (Del. 1988), *overruled*

4   *on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

5          Establishing demand futility carries a heavy burden because Delaware law presumes that

6   directors will be faithful to their fiduciary duties when considering a pre-suit demand.

7   *See Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004); *see also Leung v. Schuler*, No. 17089,

8   2000 WL 264328, at *11 (Del. Ch. Feb. 29, 2000) (stating that the good-faith presumption is

9   heightened where, as here, "the majority of the directors making the decision are independent or

10  outside directors").  To overcome the presumption of good faith, demand futility requires

11  particularized factual allegations showing that (1) a majority of the directors is "interested" in the

12  underlying claims, or lacks "independence" from someone who is, or (2) the challenged decision

13  was *not* the product of a valid exercise of business judgment.[9] *See Aronson v. Lewis*,

14  473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244 (Del. 2000);

15  *accord Stone v. Ritter*, 911 A.2d 362, 366 (Del. 2006).

16         As discussed below, Plaintiffs do not offer any factual allegations that meaningfully call

17  into question the Board's disinterestedness or independence, and the only challenged decisions,

18  relating to Mr. Miller's Separation Agreement and Polycom's stock repurchases, are protected by

19  the business-judgment rule.  For these reasons, Plaintiffs fail to establish that any director (let

20

---

21       [7]Futility is assessed at the time of filing.  *See Strugala v. Riggio*, 817 F. Supp. 2d 378, 386

22  (S.D.N.Y. 2011).  Since Mr. Miller was not a member of the Board when the case was filed, his
     disinterestedness and independence is not at issue.

23       [8]Polycom is a Delaware corporation.  (¶ 19.)  For this reason, Delaware law supplies the
     substantive standard for assessing demand futility.  *See Kamen*, 500 U.S. at 108-09 (courts "must

24  apply the demand futility exception as it is defined by the law of the State of incorporation").

25       [9]Under Delaware law, the analysis is limited to the first prong when no board decision is
     specifically challenged.  *See Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (holding that,

26  when no business decision is being challenged, "a court must determine whether or not the
     particularized factual allegations of a derivative stockholder complaint create a reasonable doubt

27  that, as of the time the complaint is filed, the board of directors could have properly exercised its
     independent and disinterested business judgment in responding to a demand"); *In re MIPS Techs.,*

28  *Inc. Derivative Litig.*, 542 F. Supp. 2d 968, 975 (N.D. Cal. 2008) ("It is worth noting the
     similarity between the *Rales* test and the first prong of *Aronson*—they are the same.").

1    alone a majority) was incapable of considering a pre-suit demand.  The Amended Complaint

2    should be dismissed.

3         A.    **Plaintiffs' Allegations About Failing to Ensure Compliance with Polycom's Policies Do Not Establish Demand Futility.**

4

5         Plaintiffs allege that Polycom's directors "face a substantial likelihood of liability," and

6    therefore are "interested" in the underlying claims, because the directors failed to take reasonable

7    steps to oversee and ensure compliance with Polycom's internal auditing and accounting controls,

8    including its expense reimbursement policies and procedures.  (¶¶ 143, 145-150.)  The allegation

9    that directors failed to adequately oversee corporate activities is known as a *Caremark* claim.

10   *See Stone*, 911 A.2d at 369-70 (citing *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959

11   (Del. Ch. 1996)).  The *Caremark* standard is "embedded in the fiduciary duty of loyalty and

12   [does] not constitute a freestanding fiduciary duty that could independently give rise to liability."

13   *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 122-23 (Del. Ch. 2009).  To plead a

14   failure of oversight under the *Caremark* standard, Plaintiffs must allege a "sustained or systematic

15   failure of . . . the board to exercise oversight" that demonstrates a "conscious disregard" of

16   fiduciary duties.  *Stone*, 911 A.2d at 369, 370 (quotation marks and internal citation omitted).

17   This systematic failure of oversight must be so egregious as to constitute "bad faith," *i.e.*, that

18   "the directors *knew* that they were not discharging their fiduciary obligations."  *Id*. at 370

19   (emphasis added).

20        To meet this standard, there must be particularized facts showing that directors (1) "utterly

21   failed to implement any reporting or information system or controls," or (2) "consciously failed to

22   monitor or oversee [the company's] operations thus disabling themselves from being informed of

23   risks or problems requiring their attention."  *Id*.; *see also Guttman v. Huang*, 823 A.2d 492, 507

24   (Del. Ch. 2003) ("[T]he kind of fact pleading that is critical to a *Caremark* claim [includes] . . .

25   contentions that the company lacked an audit committee, that the company had an audit

26   committee that met only sporadically and devoted patently inadequate time to its work, or that the

27   audit committee had clear notice of serious accounting irregularities and simply chose to ignore

28   them or, even worse, to encourage their continuation.").  Because of these exacting requirements,

1  demonstrating a failure of oversight under the *Caremark* standard is "possibly the most difficult

2  theory in corporation law upon which a plaintiff might hope to win a judgment." *Stone*,

3  911 A.2d at 372 (quotation marks and internal citation omitted).

### 1.      There are no allegations of inadequate controls.

5  Plaintiffs come nowhere close to alleging a failure of oversight under the *Caremark*

6  standard.  By the Amended Complaint's own allegations, it is undisputed that Polycom has a

7  system of financial controls in place.  These controls include an Audit Committee, a Corporate

8  Governance and Nominating Committee, an Audit Committee Charter, and a Code of Business

9  Ethics and Conduct, among others.  (*See, e.g.*, ¶¶ 22-24, 50, 118-119, 121, 148.)  Moreover, the

10  Amended Complaint acknowledges that "Polycom had a tightly-monitored expense report

11  approval process" (¶ 43), and that the Company reviewed Mr. Miller's expense reports (showing

12  that the Company's controls were used).  (¶¶ 4, 97, 113-114.)  Thus, Plaintiffs do not allege that

13  the directors "utterly failed to implement any reporting or information system or controls." *Stone*,

14  911 A.2d at 370.

### 2.      There are no allegations of a deliberate failure to monitor.

16  Because Polycom's directors implemented adequate controls, Plaintiffs' oversight claim

17  fails unless they show that the directors consciously failed to monitor Polycom's operations or

18  ignored "red flags." *See id.*  Plaintiffs recite various oversight duties required by Polycom's

19  Audit Committee Charter (¶¶ 148-150), but they do not identify one instance in which the

20  directors ignored "red flags" about Polycom's financial controls.  Nor do they offer particularized

21  factual allegations showing that the directors ignored obvious warning signs with respect to

22  Mr. Miller's expenses. *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 174 (D. Del.

23  2009) (dismissing oversight claim with "no allegations regarding how often the Board met, if at

24  all, to discuss the alleged [illegal] activity," "no allegations that the Board approved any such 'red

25  flag' activity," and "no allegations as to how often and by whom the Board was advised regarding

26  the 'red flags'"); *Andropolis v. Snyder*, No. 05 CV 01563 EWN BNB, 2006 WL 2226189, at *13

27  (D. Colo. Aug. 3, 2006) (dismissing oversight claim that "simply re-iterates . . . conclusory

28  allegations regarding the Audit Committee's and the Director Defendants' 'failure to properly

1   monitor [defendant CEO's] compliance with the Code of Ethics which resulted in a misuse of

2   corporate assets'" because the complaint "has not identified particular 'red flags' or specific

3   conduct that the Audit Committee failed to respond to or rectify").

4           At bottom, Plaintiffs allege that any purported wrongdoing would not have happened had

5   the Audit Committee members performed their oversight duties, but this type of allegation has

6   been repeatedly rejected.  *See In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270-71

7   (Del. Ch. 1995) (rejecting oversight claim "premised on a presumption that employee

8   wrongdoing would not occur if directors performed their duty properly"); *Hazelton v. Kuttner*,

9   No. 08:06CV02063, 2007 WL 1120405, at *4 (D.S.C. Apr. 13, 2007) (dismissing oversight claim

10  because the "[c]omplaint contains neither specific details regarding the company's internal

11  controls nor particularized allegations regarding information or warning signs that had been

12  brought to the attention of the Director Defendants").  While Plaintiffs allege that the Audit

13  Committee "discovered that no audit of [Mr.] Miller's expenses was ever conducted" (¶ 149), and

14  that the Committee therefore knew that the Company "lacked even the most basic internal

15  controls" to prevent Mr. Miller's improper expense submissions (¶ 150), these allegations do not

16  show that the Board ignored red flags that should have prompted further action.  They do not

17  address whether Polycom had other controls in place, such as designating someone to review all

18  expenses by Section 16 officers or having its independent audit firm conduct "credible random

19  tests on management's integrity."  *Guttman*, 823 A.2d at 507.  And they do not square with the

20  Amended Complaint's own allegations acknowledging that the Audit Committee did, in fact,

21  review Mr. Miller's expense submissions.  (¶ 97.)

22          Finally, without allegations that any purported expense report irregularities were material

23  to Polycom, it is not possible (let alone plausible) to allege a failure of oversight based on

24  *immaterial* expense irregularities.  Polycom hired independent advisors to examine Mr. Miller's

25  expense submissions after he left the Company, and these advisors confirmed that any

26  irregularities were immaterial.[10]  (Ex. 5 at 60.)  For these reasons, Plaintiffs' oversight claim does

27  ─────────────────

28          [10]Polycom's total operating expenses for FY 2011 and 2012 totaled $1.5 billion,
    (Decl. ¶ 9; Ex. 6 at 35), and Polycom's independent advisors concluded that $77,000 of

not establish demand futility.

**B.      Plaintiffs' Allegations About False or Misleading Financial Statements Do Not Establish Demand Futility.**

Plaintiffs also allege that Polycom's directors "face a substantial likelihood of liability" because they "knowingly and/or with reckless disregard reviewed and authorized the publication of materially false and misleading statements." (¶ 142.)  Where, as here, a corporation exculpates directors from personal liability for breaches of fiduciary duties to the fullest extent permitted by law,[11] directors can be held personally liable only for "*deliberately* misinform[ing] shareholders about the business of the corporation, either directly or by a public statement." *Citigroup*, 964 A.2d at 132 (emphasis in original; internal quotation marks and citation omitted).  This means that, to establish demand futility, the Complaint "must plead particularized factual allegations that 'support the inference that the disclosure violation was made in *bad faith*, *knowingly* or *intentionally*.'" *Id.* (internal quotation marks and citation omitted) (emphasis added).  This requires specific allegations about *what* communications were allegedly false, *who* knew that the communications were false, and *when* did they know that they were false.  *See id.* at 134; *see also* Fed. R. Civ. P. 9(b).[12]

---

Mr. Miller's expenses were "personal or most likely personal," and that $116,000 might (or might not) also be personal over a three-year period.  (Ex. 5 at 59.)  Even if the entire $193,000 of these reimbursements between 2011 and 2013 were personal expenses (which the Company has not determined and which Mr. Miller denies), that would amount to one one-hundredth of one percent of Polycom's operating expenses just for 2011 and 2012 (without taking into account operating expenses in the first half of 2013, which would drive the percentage even lower).  (Decl. ¶ 10.)  Plaintiffs' unsupported allegation of "millions" in personal expenses does not alter this analysis because the expenses would still constitute a fraction of a percent of Polycom's operating expenses.

[11]Polycom's exculpatory clause in its Certification of Incorporation effectively bars claims against directors for breaches of the duty of care.  (Ex. 7, Art. IX.)  Polycom's certificate states that "[t]o the fullest extent permitted by Delaware Corporation Law . . . no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."  This provision is authorized by Section 102(b)(7) of Delaware's General Corporation Law, and effectively "insulates directors from liability for breaches of the duty of care."  *Guttman*, 823 A.2d at 501; *Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001) (Section 102(b)(7) exculpation clause bars duty of care claim "*as a matter of law*") (emphasis in original).

[12]Rule 9(b)'s heightened pleading requirement also applies to these allegations because they "sound[] in fraud."  *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013); *Speck, Jr. v. Brown*, No. 09 CV 3834, 2010 WL 3781044, at *2

1       Plaintiffs fail to demonstrate that the Board members *deliberately* authorized any false or

2   misleading statements in press releases or financial statements so as to create a substantial

3   likelihood of personal liability.  *See Citigroup*, 964 A.2d at 134.  Plaintiffs do not allege that any

4   of the directors submitted questionable reimbursement requests or benefited from them, and so

5   Plaintiffs must show how these directors knowingly authorized other false or misleading

6   statements.  Simply alleging that three members of Polycom's Audit Committee "were

7   responsible for reviewing and approving quarterly and annual financial statements and earnings

8   press releases, and reviewing and approving Polycom's internal controls over financial reporting"

9   (¶ 145), is not enough because execution of financial reports—without more—is "insufficient to

10  create an inference that the directors had actual or constructive notice of any illegality."[13]

11  *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008); *Citigroup*, 964 A.2d at 134 (dismissing complaint

12  that "merely alleges that [the Company's] financial statements contained false statements and

13  material omissions and that the director defendants reviewed the financial statements pursuant to

14  their responsibilities under the ARM Committee charter" because director defendants were not

15  "directly responsible for the misstatements or omissions"); *In re Goldman Sachs Mortg. Serv.*

16  *S'holder Derivative Litig.*, __ F. Supp. 2d __, No. 11 CIV 4544 WHP, 2012 WL 3293506, at *9

17  (S.D.N.Y. Aug. 14, 2012) (same); *In re Accuray, Inc. S'holder Derivative Litig.*,

18  757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) (holding that just because "backlog and revenues were

19  discussed at board meetings and touted in press releases and conference calls cannot imply that

20  any . . . directors knew of the alleged accounting problems").

21      Plaintiffs also do not plead particularized factual allegations about the "who, what, where,

22

---

23  (N.D. Ill. Sept. 20, 2010) (holding that breach of fiduciary duty claim for providing plaintiff with false, misleading, or incomplete information "sound[ed] in fraud"); *Vess v. Ciba-Geigy Corp.*

24  *USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (holding that a claim's fraudulent allegations must meet Rule 9(b)'s heightened pleading requirements even if the claim is also supported by other

25  allegations not concerning fraud).  Thus, in addition to meeting Rule 23.1's standards, the Complaint must also meet Rule 9(b)'s heightened pleading standard and allege (1) what were the

26  false or misleading statements, (2) who made them, (3) when were they made, and (4) why were they materially false or misleading.  *See Wilson*, 961 F. Supp. 2d at 1139.

27      [13]Moreover, Polycom's Audit Committee Charter states: "It is not the responsibility of the Audit Committee to prepare or certify the Company's financial statements or guarantee the audits

28  or reports of the independent auditors."  (Ex. 4 at § 4.)

1   and when" of the allegedly false or misleading statements.  In a section called "The Individual

2   Defendants Cause Polycom to Issue Materially Misleading Statements," the Complaint references

3   Polycom's press releases and portions of corporate filings from May 2010 to April 2013, but it

4   does not identify *who* knew that the communications were false and *when* did they know that they

5   were false or misleading.  (*See* ¶¶ 55-96.)  Because all of the allegedly false or misleading

6   statements involved Mr. Miller's conduct and expense submissions (or Polycom's alleged failure

7   to have effective internal controls, as discussed *supra* at 8-9) (¶ 65), there is no basis to conclude

8   that any other Board members knew that these statements were misleading when made.[14]

9       Plaintiffs' other allegations about the Company's general awareness of Mr. Miller's

10  expense submissions also do not speak to the Board's particularized knowledge.  Plaintiffs allege

11  that "[Mr.] Miller's improper expenditures were 'common knowledge' throughout the Company,"

12  and that "[t]his knowledge reached the highest levels of senior management."  (*See* ¶¶ 48-49.)

13  Plaintiffs also describe one conversation between the confidential witness and Laura Durr

14  (Polycom's controller and eventual Interim Chief Financial Officer) in which they purportedly

15  discussed Mr. Miller's "unusual expense reports."[15]  (*Id.*)  None of these allegations establishes

16  that that Board members knew about Mr. Miller's allegedly improper expenses (or should have

17  known about them) when they approved SEC filings and press releases.  *In re Accuray*,

18  757 F. Supp. 2d at 928 (dismissing derivative claim with allegations from confidential witnesses

19  because witnesses had no contact with defendants and "no knowledge of what either [d]efendant

20  knew at the time each of the challenged statements was made").  Without identifying

21  particularized facts, there is no way to determine whether any directors made statements or

22  omissions knowingly or in bad faith.  *See Citigroup*, 964 A.2d at 134; Fed. R. Civ. P. 9(b).

23

24

25  [14]All of the allegedly false or misleading statements are premised on the assumption that
    "[Mr.] Miller was appropriating Polycom's funds for personal expenses in *material* amounts."
26  (¶ 65 (emphasis added).)  Since Polycom determined that Mr. Miller's expense submissions were
    *immaterial*, as discussed *supra* at 2-3, 9 n.10, it therefore follows that none of these statements is
    false or misleading.

27  [15]Plaintiffs do not identify when the conversation between the confidential witness and
    Ms. Durr happened or who else knew about it, or explain what "unusual" means in that context.
28  Sloppy expense reports could be "unusual," but not necessarily "false" or "improper."

Because Plaintiffs do not plead particularized facts showing that any director *knowingly* authorized false or misleading statements, Plaintiffs fail to establish demand futility on this ground.

### C.   Plaintiffs' Allegations About Authorizing Mr. Miller's Separation Agreement and Release Do Not Establish Demand Futility.

The Board's decision to authorize Mr. Miller's Separation Agreement and Release is protected by the business-judgment rule.  Although Plaintiffs allege—with no facts whatsoever— that the Separation Agreement was not a valid exercise of business judgment, constituted corporate waste, and demonstrates that the directors are not "independent" from Mr. Miller (*see* ¶¶ 112, 127, 144, 169), the exact opposite is true.  The Separation Agreement shows independent business judgment and supports the directors' independence.

### 1.   The Separation Agreement and Release Is Protected by the Business-Judgment Rule.

The business-judgment rule applies to decisions to enter into separation agreements with former executives.  *See, e.g.*, *In re HP Derivative Litig.*, No. 5:10-CV-3608 EJD, 2012 WL 4468423, at *5 (N.D. Cal. Sept. 25, 2012).  Directors are presumed to have acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Aronson*, 473 A.2d at 812.  As long as "*any substantial* consideration [was] received by the corporation," courts will defer to the business judgment of the directors.  *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997) ("Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard.").

To overcome the business-judgment-rule presumption in derivative cases, "'plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.'"  *HP*, 2012 WL 4468423, at *5 (quoting *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005)).

Here, there are no particularized facts suggesting that Mr. Miller's Separation Agreement and Release was *not* entered into honestly or in good faith.  For example, Plaintiffs have not

alleged that any of the directors were on both sides of the transaction, received a personal

financial benefit, or had any other interest in Mr. Miller's Separation Agreement.  *See Potter*,

546 F.3d at 1059 ("[W]here mere approval of corporate action, absent self-interest or other

indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for

excusing demand on them, plaintiff's suit should ordinarily be dismissed.") (quoting

*Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1210 (9th Cir. 1980)).

Instead, Plaintiffs suggest that the Board was not adequately informed when deciding

whether to approve the agreement because Polycom's investigation into Mr. Miller's expense

reports was ongoing.  (¶ 112.)  Plaintiffs acknowledge, however, that the Board was informed

about the alleged irregularities in Mr. Miller's expense reports before it entered into the

Separation Agreement with him.  (¶ 97.)  And since the Release applied solely to any claims

*Mr. Miller* may have had related to his employment at Polycom, it does not matter whether

Polycom's investigation was ongoing when the Separation Agreement was signed.

Plaintiffs also claim that Mr. Miller's Separation Agreement was a waste of corporate

assets because it unjustifiably granted him a "golden parachute."  Claims for corporate waste

"arise only in the rare, 'unconscionable case where directors irrationally squander or give away

corporate assets.'"  *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (quoting

*Brehm*, 746 A.2d at 263).  Unless the Separation Agreement "could be characterized as a mere

gift serving no corporate purpose," there is no claim for corporate waste.  *HP*, 2012 WL 4468423,

at *6 (stating that this is "an extreme test, very rarely satisfied by a shareholder plaintiff")

(internal quotation marks and citation omitted).  Here, Plaintiffs do not demonstrate that any

benefits Mr. Miller received as part of the Separation Agreement were excessive.  *See, e.g.*, *HP*,

2012 WL 4468423, at *2 (finding that $12.2 million in cash, various stock options, and base

salary were not so excessive as to constitute waste); *Walt Disney*, 906 A.2d at 74 (holding that

payment of $130 million severance package did not constitute corporate waste).  Nor can

Plaintiffs demonstrate that the Separation Agreement granted Mr. Miller more than he was

entitled to had he been terminated without cause.

More fundamentally, Plaintiffs do not—and cannot—allege that the Separation

Agreement lacked consideration.  In addition to providing transition services (Ex. 2 at 2),

Mr. Miller released his employment-related claims against Polycom (*id.* at 4-5)—which was

sufficient consideration in and of itself.  *See HP*, 2012 WL 4468423, at *7 (finding consideration

for release because it "protected against the expense of litigation and negative publicity resulting

from having to defend against such a claim").[16]

### 2.    The Separation Agreement Supports the Board's Independence.

Contrary to Plaintiffs' conclusory allegations, the Board's decision to accept Mr. Miller's

resignation and enter into a Separation Agreement demonstrates the directors' independence.

Directors lack "independence" if they are so "beholden" to a defendant who has a personal

financial interest in the litigation that the directors' "discretion would be sterilized."  *See Rales v.

Blasband*, 634 A.2d 927, 936 (Del. 1993).  Delaware law presumes that directors are independent,

*see Beam*, 845 A.2d at 1048-49, and to overcome that presumption a plaintiff must plead

particularized facts showing that the directors have abandoned their fiduciary duties to the

corporation as a result of those ties, *see id.* at 1050.

Plaintiffs cannot show that the directors abandoned their fiduciary duties by authorizing

Mr. Miller's Separation Agreement.  For the reasons discussed above, there are no allegations that

Mr. Miller received more than what he was entitled to under his employment agreements.  More

importantly for purposes of the demand inquiry, Mr. Miller was *not* a member of the Board when

the first complaint was filed.  For this reason, Plaintiffs cannot plausibly allege that the same

directors who accepted Mr. Miller's resignation over *immaterial* expense reports and hired

independent advisors to examine Mr. Miller's expenses are somehow "beholden" to Mr. Miller

*after* he resigned.  Plaintiffs fail to establish demand futility on this ground.  *Andropolis*,

2006 WL 2226189, at *9 ("It is difficult to conceive that a majority of the Board was so

'beholden' to Defendant [CEO], yet they were able to initiate an internal investigation and force

Defendant [CEO's] retirement.").

---

[16]For the same reasons that the Board's decision to authorize Mr. Miller's Separation
Agreement was a valid exercise of business judgment, any allegation that Board members face a
substantial likelihood of liability for authorizing the Separation Agreement also fails.

**D.    Plaintiffs' Allegations About Mr. Miller's Wholesale Changes to Polycom Do Not Establish Demand Futility.**

Plaintiffs allege that demand is futile because Polycom's directors gave Mr. Miller "carte blanche" to enact wholesale changes at Polycom, which demonstrates that the directors were "beholden" to Mr. Miller.  (¶¶ 31, 151.)  Plaintiffs do not allege, however, that Mr. Miller had any power over the directors themselves—or that he had the power to oust any of them.  *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 821 (Del. Ch. 2005) (dismissing claim that directors lacked independence from CEO because there were no allegations that CEO could fire the directors or oust them through a stockholder vote), *aff'd*, 906 A.2d 766 (Del. 2006).  There are no allegations of family or personal relationships that cast doubt on the directors' independence. *See Beam*, 845 A.2d at 1050 (dismissing claim that directors lacked independence based on "mere personal friendship or a mere outside business relationship").  Merely empowering Mr. Miller to hire his *management* team—none of whom served on the Board—does not demonstrate that *directors* lacked independence from him.  And, as discussed above, accepting the resignation of the Company's CEO over immaterial expense reports is completely inconsistent with allegations that the Board was somehow "beholden" to Mr. Miller.

**E.    Plaintiffs' Allegations About Polycom's Repurchases of Company Stock Do Not Establish Demand Futility.**

Plaintiffs allege that demand is futile because Polycom's directors authorized repurchases of Polycom's stock at artificially inflated prices, which constituted corporate waste.  (¶¶ 107-108, 169.)  Claims for corporate waste require allegations that the exchange "is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration."  *Citigroup*, 964 A.2d at 136-37 (internal quotation marks and citation omitted) (holding that "board's approval of the stock repurchase program falls far short of satisfying the standard for demand futility" because plaintiffs could not "explain how buying stock at the market price—the price at which presumably ordinary and rational businesspeople were trading the stock—could possibly be so one sided that no reasonable and ordinary business person would consider it adequate consideration"); *see also In re Silicon Graphics Inc. Sec. Litig.*,

183 F.3d 970, 990 (9th Cir. 1999) ("[Plaintiff] has not stated facts that demonstrate that the Board intended for the stock repurchase plan to inflate artificially the value of SGI stock in order to facilitate insider trading.  In the absence of such facts, we must presume that the Board had a legitimate business purpose when it repurchased SGI stock."), *superseded by statute on other grounds*.

Here, Plaintiffs have not alleged particularized facts to suggest that Polycom's Board had any knowledge that the stock price was artificially inflated at the time of the repurchase authorization.  More fundamentally, there are no allegations that the repurchases were "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Citigroup*, 964 A.2d at 137 (internal quotation marks and citation omitted).  Plaintiffs fail to excuse demand based on the stock repurchases.

**F.      Plaintiffs' Other Allegations Do Not Establish Demand Futility.**

Plaintiffs' remaining allegations about demand futility also fail.  Plaintiffs claim that demand should be excused because Polycom's directors would lose insurance coverage under the "insured versus insured exclusion" if they file suit against themselves, and so will not bring suit (¶ 153); that the directors are more interested in protecting themselves than in protecting Polycom (¶ 154); and that the directors have not yet filed any lawsuits against themselves or others (¶ 155). These conclusory allegations are nothing more than variations of the "'directors suing themselves' and 'participating in the wrongs' refrain," which do not excuse demand. *Carauna v. Saligman*, No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990); *see also Intel*, 621 F. Supp. 2d at 179 ("To the extent the Complaint alleges that the 'Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company,' this rationale for demand futility has been repeatedly rejected by Delaware courts."); *Ferre v. McGrath*, No. 06 Civ. 1684, 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007) ("The existence of a so-called 'insured versus insured' exclusion . . . fails to establish director interest. Indeed, this argument has been rejected repeatedly under Delaware law.").

1

**CONCLUSION**

2          The decision to pursue litigation belongs to Polycom's Board, and Plaintiffs fail to show

3     that the Board is unable to exercise its disinterested and independent business judgment on this

4     issue.  For the reasons set forth above, the Court should dismiss Plaintiffs' Amended Complaint

5     —the third complaint filed in this action—without leave to amend.

6

7     Dated:  May 23, 2014               PAUL T. FRIEDMAN
                                         PHILIP T. BESIROF
8                                        MORRISON & FOERSTER LLP

9                                        By:   _/s/ Paul T. Friedman_____
                                               PAUL T. FRIEDMAN
10

11                                       Attorneys for Defendant
                                         ANDREW M. MILLER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ECF ATTESTATION**

I, Philip Besirof, am the ECF User whose ID and Password are being used to file this motion. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Paul Friedman has concurred in this filing.

Dated: May 23, 2014

PAUL T. FRIEDMAN
PHILIP T. BESIROF
MORRISON & FOERSTER LLP

By:   */s/ Philip T. Besirof*
PHILIP T. BESIROF

Attorneys for Defendant
ANDREW M. MILLER